1018

COPEMAN LABORATORIES CO. v. GENERAL PLASTICS CORPORATION et al.

No. 43 C 246.

District Court, N. D. Illinois, E. D.
March 30, 1944.

E. S. Booth and Dawson, Ooms & Booth, all of Chicago, Ill., for plaintiff.

Thiess, Olson & Mecklenburger, of Chicago, Ill., for defendant.

HOLLY, District Judge.

Plaintiff charges infringement of two reissue patents, Nos. 17,278 and 17,279 relating to ice cube trays.

Lloyd G. Copeman who filed the application for the original patent on which these reissues were based was the owner of a farm in Michigan. While gathering maple sap there in the Spring of 1928 he observed that slush ice which gathered on his rubber boots could be easily removed by simply distorting the rubber whereupon the ice fell off. He had been engaged in the development of hydro-electric refrigerators for about eight years and it occurred to him that if ice cube trays were made of rubber the ice could be readily removed by distortion of the tray. Theretofore such trays had been made of metal to which the ice had adhered and from which it was removed, usually, by the application of heat to the metal, an operation requiring time and involving the loss of some of the ice.

Plaintiff charges infringement of several of the claims of Reissue Patent No. 17,278, but claim 3, which counsel for plaintiff says in his brief may be taken as representative, reads as follows:

"3. As a new article of manufacture, a sharp freezing container of the type adapted to be positioned in heat exchange relation with the cooling unit of a mechanical refrigerating system, said container being relatively small so as to be readily handled and manipulated by the fingers and thumb and formed of non-metallic, easily distortable, self-supporting material to which ice does not readily adhere, whereby to permit easy removal of the frozen article or articles by distortion of all or part of said container by hand."

The substantial difference between the two patents is that No. 17,279 provides for a reinforcing means for a part of the distortable container for maintaining it in shape when in use.

Defendant's tray which plaintiff claims infringes is made of celluloid. Ice does not adhere to this material, the tray is distortable and when distorted the ice is loosened and will fall out. It appears to be quite inferior to plaintiff's rubber trays in that while distortable it is not so easily manipulated and if twisted carelessly may break.

Defendant denies both the validity of plaintiff's patents and infringement.

On the issue of infringement defendant while it cites some 38 patents on anticipation and prior art, relies almost wholly on four, Coleman No. 534,633, Burger No. 1,207,852, Euchenhofer No. 459,700 and Hathorne No. 1,932,731. In my opinion Burger No. 1,207,852 is the only one that need be considered. Burger had invented a candy mold. The object of his invention, as he stated it, was to effect a saving in labor, to produce filled chocolate confections without dipping and eliminate the handling of the confections during manufacture. The principal feature of the invention consisted of a divided mold of flexible material, preferably rubber, so that the molded confection could be released from the mold without being broken. The pockets of the mold, it was suggested, should be coated with a suitable non-solvent and glazing material, such as celluloid, which would prevent adhesion of the candy to the mold. In operation the halves of the mold are clamped together, the chocolate is poured in, the mold then inverted to permit the surplus chocolate to run out leaving only sufficient for the outer coating of the confection and the filling is then

put in and the upper surface coated over with chocolate. After the material has cooled and hardened the clamps are loosened slightly, the expansible material of which the mold is made expands and separates the mold surface from the molded material. The mold is then grasped in the hands and given a slight twist which effects a further release of the molded article, the mold is then inverted and the two sections separated thus delivering the molded articles upon the flat bottom side.

I do not think this patent anticipates Copeman so far as the use of rubber is concerned. In fact it negatives the idea that rubber alone might be used or that the liquid or semi-liquid material would separate easily from rubber by mere twisting. Burger states expressly that the pockets in which the material to be molded is placed should be glazed with some material such as celluloid. Were the Copeman patent for a rubber tray only I would be inclined to sustain it but Copeman claims extend in No. 17278 to a container "formed of any non-metallic easily distortable, self-supporting material to which ice does not readily adhere whereby to permit easy removal of the frozen article or articles by distortion of all or any part of said container by hand," and in No. 17279 to a container "formed of a permanent readily distortable material not readily wettable by water to permit easy removal of the frozen article or articles." The Burger patent does teach that the molded material may be easily removed from a celluloid frame by distortion. Copeman's claims are broad enough to include celluloid and he is here complaining that a celluloid container infringes his patent.

He insists, however, that candy making is a non-analogous art. I cannot agree. Ice is simply the solid form of water produced by the abstraction of heat. In the forming of the chocolate confection by the Burger method the chocolate goes into the mold in a liquid form, the fondant is a semi-solid and becomes hardened by the abstraction of heat. The fact that the chocolate does not adhere to the celluloid coated mold when it hardens and may be loosened by distorting the mold suggests, it seems to me, that the ice could be loosened in the same way.

In my opinion Copeman was anticipated by Burger and the two patents are invalid. An order accordingly will be entered March 30, 1944.